The Court's permission, I'd reserve up to three minutes for a rebuttal. I'm Miles Prince on behalf of Plaintiff and Appellant Rick Espindola. You know, in our line of work, I always try to find opportunities to focus on what we can all agree on. And we can all agree the District Court simply did two-thirds of the test. The McDonnell-Douglas test in FEHA summary judgment has three prongs. This District Court simply stopped at the end of the second. I think the word pretext appears once in the District Court's order, and that's in the block quote for the entire test. The Court basically said you did not produce enough evidence to overcome the legitimate nondiscriminatory reason. I think we can infer, although the Court, you're right, didn't kind of walk through in detail, but I think we can infer the Court made an implicit finding in step three that you just didn't have enough evidence. So, and that's what you probably want to start by attacking that. So, it's just different. That's exactly what I was going to say. Now, Mr. Martinez is going to say he didn't, the District Court was just doing extra by even looking to the second prong because of the suggestion that we didn't meet the prima facie case on the first prong. But I think that simply flies in the face of copious amounts of evidence that was presented to the District Court and remained on the record past all evidentiary rulings. We have to remember, you know, the Truong case, the Huck case, a very minimal standard, very minimal standard on that first prong to show a prima facie case. And here, I mean, if we, I outline them in page 23 of the brief. He told them he had a medical condition that caused chronic pain. He said that on his first day of work to the CBO, you know, he said he had been treated and physicians couldn't figure out what was going on. They recommended medical marijuana as sort of a last resort therapy. He forwarded the state of Florida's certification that he had a qualifying disability and even clarified that that was based on submission of MRIs. So, it sounded like you were starting with pretext and I'd actually be more interested in your pretext evidence. This goes to prong one, but can you talk about why you think you've shown pretext? Sure. You know, there's six different theories of pretext all backed by evidence that were presented to the district court. And I think of sort of the analogy of when you're running from a bear, you don't have to be the fastest, right? You just don't, can't be the slowest. Any one of them is sufficient to defeat the motion. I think, you know, first of all, the lack of a written policy. I would point to the city of Oakland case and very, very similar circumstance here. They said the failure to hire was justified by some hiring freeze, but they couldn't produce a written policy to show that there was actually a hiring freeze in place. Very similar. There was no evidence at all that there was a hiring freeze. Here, I'm not sure exactly what you're saying there isn't a written policy of, because the handbook talks about testing. They called him and said he had to have testing. I mean, there's evidence of testing here. And in the case you're relying on, there was no evidence of a hiring freeze at all. But here, there is evidence. Well, I don't, I don't agree that there's evidence of conditioning all offers of employment on passing a drug test. That's what the policy is. Especially at summary judgment, if we're making all reasonable inferences and viewing the evidence most favorable to Mr. Espindola, the suggested policy is, and let's be very clear about what the suggested policy is viewed most favorably to Mr. Espindola, that every offer of employment by Wismitech is conditioned, expressly conditioned, on passing, passing a drug test. And that physician approved medical marijuana does not pass that drug test. I think they don't say expressly. They admit that it's not always expressly, right? They have to, because it wasn't expressly in his offer. Well, and I think that's what, what makes it pretext. Especially then when you move to the, when you see the offer letter to Alan Sterling, same firm, same recruitment forms, also a vice president of the company, same process, out around the same time. There's a whole paragraph in his offer letter, not only that the offer is conditioned on passing the drug test, but here's what you have to do before the first day of work. Now, remember my client showed up to work, spent the entire first half of the day with HR filling out paperwork, and even that call, Judge Freedman, that you referred to, that was the end of it, and the internal emails show that after that call, the recruiter sent an email and said, it's too late. It wasn't a condition of his offer, and after receipt of that email from their own recruiter, there was not a further mention of drug testing until his second week of employment, after multiple conversations with the CEO about the nature of his disability. Can you remind me, in the period between December 3rd and December 10th, I think you say that your client was receiving assurances, maybe, that, I don't know, the testing requirement was going to be waived, or it was somehow going to just be overlooked. Yes, Judge Lockford, he, my client received those confirmations, both on the phone and in person from the CEO, but more importantly, the CEO of the company even sent an email to the recruiting company saying, hold on, he doesn't need to be drug tested anymore. Okay, but did, they say very explicitly in their briefs that when your client showed up on the first day, he was basically told, oh no, you are going to have to take this test. Is that, that's just not correct, in your view? I don't recall that evidence in the record, but if it is, I don't think that's of consequence now, because we're at summary judgment. I mean, that would quite literally just be a disputed material fact that requires trial. I think. But what specifically, then, was your client told in your version of the events? When he shows up, he's told, oh yeah, you know, we've talked about that, but it's all good. We're not going to insist upon your taking the test. Yes, and in fact, we even submitted to the district court, it's attached to my client's declaration. He initially missed the call. He called him back about a minute later. We showed the iPhone records. It was like 930 at night on his second day of work. The CEO called, in first in person on the first day of work, when he first disclosed the disability and the prior marijuana use. He was told, don't worry about it. We'll work it out. Then, the next day, he gets a call at 930 at night from the CEO. It's a brief call, obviously not discussing business or work. It's a brief call just to say, you know, I've confirmed you're fine. And what's important, I think, to make sure we remember, then, he then continues to work, and in their own words, make meaningful contributions to the company. And that's critical, because the only authority they have to suggest that this was somehow still in a pre-employment drug test in his second week of work is that Hines case from the California Court of Appeal case. But that case is very clear. It says this guy spent a couple of hours at the office filling out paperwork, and then he left. And then, a few days later, he took the drug test. But I think the language the court uses in Hines is before performing any substantive work. My time is over. In a sense, what you're saying is that if you show up to work, and you do a good job, the requirement of a test is waived, because he signed off on the handbook, which required that he take a test, right? Well, I don't know if it's waived, but at a certain point in time, you know, in all contracts, in all agreements, we, you know, sometimes conditions are waived. Sometimes duties are waived. At a certain point in time, I mean, could they have tested him on purpose? Well, but he asked to have it delayed. They were accommodating him. And not, he had to see his mother who was sick or something. And he said, okay, we'll accommodate you. You show up, and then you take the test. Isn't that what the record shows? No, Your Honor, and that's an important point to make sure we make clear. He received that call prior to starting work. And they said, well, maybe you can just take it when you arrive to California. He never said yes. He never agreed to that suggestion. He deflected the conversation. I mean, and think about my client's perspective here. I mean, he doesn't want to tell the recruiter a month before beginning the job, oh, I can't do that because I have a disability, and I've treated it with medical marijuana. He deflected the conversation by saying, well, I'm too busy. You know, I've got to get to California. But then the fact that the company, including spending the first half a day with HR, took no steps subsequently to either make sure he got drug tested or even ask if he had. He spent those first days, no one even knew if he had conducted, taken the drug test. And so, I think at a certain point in time, you know, he's an employee. And so, whether or not the company says all employees are subject to a pre-employment drug test, I mean, eventually it's fix or cut bait, right? I mean, you, could they have tested him a month later, three months later, the next year? I mean, how much more work do you need to do for the company? And this gets into, I want to make sure we touched on the issue of an accommodation. Because the only basis they have to say that there was no duty to accommodate was that he was an employee, and the district court says was not subject to the duty to engage in the interactive process. Could they have paid him below minimum wage? Could they have rejected a claim for worker's comp after an injury at the office? I'm sure they think he's subject to his trade secret agreement for everything he learned during those first two weeks of employment. I mean, at a certain point in time, you are an employee, and it doesn't matter what your pre-employment policies were. Because you, as his offer letter said, you will be governed by the terms of the handbook, not by the terms of your offer at that point. But again, this is important too, and I want to make sure I highlight. We don't even really need to, the irony here is that the district court shouldn't have reached the issue of pretext. Because that drug test should not have been used as a legitimate basis for termination, especially at summary judgment. I mean. Why is that? What you're saying is because they seem to have exceptions, it's not a real policy at all? Or what are you saying about that? Because it was not a condition of his accepted written offer. And I think that the cases, California cases are very clear, particularly Loder. But then the Ross court talks about Loder, how they reached that conclusion. And the only reason that drug testing is allowed on a pre-employment basis in California is as a result of the FEHA regulations related to medical examinations. And basically, all the Loder courts, which is kind of like the drug testing case in California, all the Loder courts said is that that FEHA, those medical examinations can include drug testing. But you still got to fill all the requirements of the FEHA regulation. And as Korolowski and Wilkinson, Hine, all of those cases say, one of those requirements is that it has to be a condition of your offer. And if the. I saw cases that said, that mentioned as one of the things they're talking about that this was a condition of the offer. I didn't actually see any case that said, if it's not an express condition of the offer, it is illegal, it can't happen in California. Can you point to any case that says that? Hopefully this one. But my point being is that I think this court has discussed the rationale for why that's the law. And it's strikingly compelling to just the manifest unfairness that my client encountered here. It's the Lionel versus American Airlines case. This court says, FEHA deliberately allows job applicants to shield their private medical information until they know that absent an inability to meet the medical requirements, they will be hired. And if they are not hired, the true reason for the employer's decision will be transparent. So, it seems like you might have a contract claim or some sort of induced reliance here that caused your client damages because of the contract negotiation that didn't mention this. Have you pursued that? Like, it seems like this, the current legal framing doesn't exactly match up with what the problem here was, which is that he moved across the country for a job that hadn't said in the contract that this was a requirement. Well, his offer does say he was an at-will employee, and we understand that. But I think what the real problem was is that they found out my 50-some-odd-year-old client had a degenerative medical condition within the first few weeks of his employment. And they panicked, and they realized if he got a bad drug test, they could terminate him and avoid maybe what was going to be an inconvenience and a cost to the company. And in California, that's illegal under the federal law. Have the federal parties tried to settle this case? Extensively. And you've already talked to our circuit mediators? Yes. And I know I'm running into my rebuttal time, but I do also want to make sure we touch on just two issues that I think kind of got thrown out with the bathwater at the district court. The first is retaliation in response to the request for accommodation. That's a whole separate theory of retaliation. He genuinely believed he was requesting an accommodation. Now, whether this court is willing to go along with the theory that taking opioids at work does not require some modification to policies or workplace expectations, which I think is a huge leap of logic, not only of the law. But my client genuinely thought he was requesting an accommodation, and the district court doesn't make any light of day between those two alternate theories of retaliation, so I think that claim proceeds even upholding the logic of the district court. And most importantly, the privacy claim is simply sort of summarily disposed of with the employment claims, but that is a constitutional plan, separate and apart, and the district court simply didn't do the appropriate test that's a balancing test of the expectation and the need, the expectation of privacy, and the need for the drug test, even in legal and pre-employment drug tests, right? I mean, Karlarski says we do not hold that all pre-employment drug tests are legal when they're not necessary. And in this case, there was compelling proof that the drug test wasn't necessary anymore. The CEO testified, I didn't think he was doing drugs as an employee. I knew, I believed him. So there was an important balancing test to do on the privacy constitutional claim that I think unfortunately just sort of got swept away with the employment claims. Okay, we'll give you some time for a lot of, I have just one question that I think maybe you know the answer off the top of your head. These marijuana tests that are administered, how long do you have to be clean? Like how long, does everyone know like, oh, if you smoke marijuana in the last year, it's going to show up and what's the cutoff? You know, that's one of the theories of pre-test because as to try to cooperate with the company, my client the first week, and this is in the record, told the CEO, I'll take an at-home test and hopefully, you know, it's out of my system and I can take the test and put this all behind us and, you know, we're both, it's fine. And he told him I took an at-home test and I was, it was still in my system. He was hopeful, he had actually, this isn't in the record, but he had asked his physician and his physician had said four to six weeks and he was right about it, four weeks. Okay, all right, thank you very much. Let's hear from the council for the defendant. Good morning, Raul Martinez, author of Peli Wismitech, with respect to the question on the condition of employment, the offer letter that he signed made reference to the handbook which included the provision. They didn't send him the handbook, right? They didn't send him the handbook, but then he gets a phone call from the recruiter saying you have to drug test. So I think at that point he would have understood, even though he had accepted the offer, that that is one of those conditions that are included in the handbook. It only makes logical sense. How could it be a condition of an already accepted offer? Because there are conditions and requirements in the handbook itself and so by the phone call to do the drug test, I think that puts him on notice that that is one of those requirements that the company has. Included in the handbook. So is there any case that says that someone can incorporate by reference a document that hasn't been provided? I think there's cases that say that in California law you can incorporate other documents by reference, you don't have to attach them. Even if they're not available to the person who is the other side of the negotiation? Well, a person can always inquire and ask for the handbook to be sent to him or her. So if you're trying to incorporate it by reference, doesn't it need to either be sent or readily available online or something? That's not my understanding of incorporation by reference. So what case are you relying on for that? I think California case laws, California civil code sanctions talk about incorporation by reference. And you can do that by just referring to the document. You don't have to attach it. And that was not briefed in any of the, either the low briefing or in this court. But that is my understanding of how you can incorporate by reference. Look, if I'm remembering, but tell me if I'm wrong, it doesn't actually say in explicit terms, you will not be permitted to work here unless you pass a drug test. I think it says to use it. Everybody at the time of hire will be subject to drug testing. Right, and the sanction is, some sanction up to and including termination. But that's what I'm saying. It does not say a condition of your actually even being allowed to start work and remain employed is that you pass this test, right? It's implicit. I mean, that is, you're saying every employee will be subject to it and if you don't comply with it, then I can't employ you. When your client handled this, you just were asking for this lawsuit, it seems to me, from the very beginning. And especially you have this other guy who has the letter with the thing spelled out. I just don't know how you could have handled this. Of course, not you personally, but the company. Can we shift, though, off to this point to the pretext point? Because that's where I think you have. Can I address the question of a disability? Whether it was a possibility. Answer my question first, then you're welcome. I'm sure you have counsel. Hang on a second. I'm asking you a question. I promise you, I promise you, I will give you time to address whatever issue you want to. What I'd like you to shift to is pretext. Because I think that's where you are most vulnerable at the summary judgment stage. So, maybe, if you could walk through why, let's assume that he's met the primate foster burden. Let's assume that you have come forward with a legitimate non-discriminatory reason. But at the pretext stage, it seems to me that's where you run into problems. So, address that head on, and then you can shift back. I understand the theory of the pretext is that, like my client used, it's drug testing policy requirement, whatever, as a pretext to terminate him because of a disability. The case law is very clear that the plaintiff must produce specific substantial evidence of a pretext, and the evidence he's coming up with is sort of on the periphery. The evidence is undisputed that this testing policy, drug testing policy, is very important to the company because they have federal contracts. And under federal law. But it seems like it is disputed because he has the evidence of someone saying don't worry about it. He has the evidence of he goes through the whole first day without anyone making him go for a test right then. I mean, he's got various things that do dispute whether the company is really firing everyone who doesn't pass a drug test before they start. It seems like they're not really doing that. I don't think anybody told them that the testing requirement was going to be waived. They had to take it up the chain to make sure that somebody more senior agreed that this is a pre-employment test and had to be undertaken by plaintiff. So he, I mean, you may dispute that this happened, but he says there's the boss saying something like don't worry about it, you'll be fine. But I might not have the words exactly right, but if we take that and inferences of that statement in his favor, how do you say it's not disputed? He's saying it's going to be fine. He's giving him reassurance. It's more on a psychological level. But at the same time, he knows it's being taken up the chain because he's not getting a response. He knows that it's not a definitive decision. Well, if we take don't worry about it, you'll be fine in the plaintiff's favor, then how does that not cause a question about whether there could be exceptions to this policy or whether the policy really exists? To me, that's very tenuous. I mean, a reasonable observer would have to conclude that that just come passing statement that everything's going to be fine means that we're going to overlook the drug test and everything's going to be fine, even though we have a federal policy that we have to trust drug tests to everyone because of our contracts. So, you're suggesting that that comment means we're going to overlook all of that. And that just doesn't make any sense. It's not reasonable. Well, let me just, I guess, spell out my problem with your client's position here. The purpose of the test is to disclose something that the employee might not otherwise want to share with you. And you're certainly entitled, before you bring someone on board, to know whether they've engaged in fast drug use, right? So, that's the reason why you have the test. Here, though, they had the most definitive proof that, in fact, he had engaged in the very conduct that you're looking to the test to disclose. So, that's why it just seemed entirely pretentious to me that it was, oh my God, you failed this test, you're out. I'd already, he says, I'd already admitted that I wasn't hiding it. So, and then it's the timing. So, at that one point, sorry to lengthen this out, but then it's the timing on December 10th, as I understand the chronology, is the CEO of your client and the plaintiff have a conversation, maybe it's in the morning, where he asks, can I take the pills because, you know, I'm not able to use marijuana. And even though the CEO had been told, I guess, the Friday prior, according to your evidence, that, no, he was going to have to take this test, no ifs, ands, or buts, that wasn't relayed to the plaintiff in that conversation. It wasn't until later in the day, after he's now come forward and said, I really have this serious back problem. It's so serious, in fact, that I've been prescribed opioids to treat it and I need to take them at work. It's only after that point that he's told, well, now you really are going to have to take the test. It seems to me that those two things together make it entirely reasonable for a jury to say this was completely predictable. Are you kidding? Yeah, I think what the plaintiff is surmising that he knows what's going on in our side of the discussions. And so, he sees it his own way and perhaps, you know, the record is unclear as to what happened on the employer's end and I think that may be your concern. I can just say that the policy itself is what drives this, the policy of drug testing in everyone. And if you test positive, that's a real problem for the company. You know, whether it happened at the beginning of the employment or in the middle of the employment, he tested positive and it's not the fact that he smoked marijuana and it's not the fact that he, well, the opioids are a different consideration because those are numbing, I think it's taking tramadol, which makes you unable to work. So, that's, and there's no case law. I agree, but as I understand, the only reason your client has asserted for the firing is the negative, the positive test for marijuana. That's, yeah. So, they're not focused on the opioids in terms of a justification for letting them go. No, that goes to the accommodation issue. Okay, but so, I don't know. I mean, is that your response to my? I respond, I mean, my problem with this case is that I don't think that he had a disability to begin with. That's where we start. I see why you want to start there. Yeah. Because I've got to tell you, I think you lose on pretext. That's the summary judgment state. So, let's hear what you say. I think the problem we have is that he comes to our client and he says, you know, I have serious back pain. Okay, what does that tell the employer? Because under the FIIA statute, a physical disability refers to a physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss. And the district court cases, several of them, including California Court of Appeal, Archeaga case, says that pain alone is not enough to create a disability, that you have to look at what the pain does to the employee and his work functions. And if he can function at work, even with the pain, then it's not, there's no disability. So, in this case, he has pain that makes him have to, he can't sit the whole day, is what he's saying. Sitting is a problem for him. But what does that tell the employer? The employer can say, okay, well, get up and walk around every hour or so. Nobody's preventing you from doing that. And B, he's been doing the job for two weeks. He's been functioning just fine. And so, from the employer's point of view, they don't see a doctor's note. They don't see a specific diagnosis of a medical condition. So, they don't perceive him as being disabled. That's really the crux of our problem. Well, what about the, I mean, I think you're right that it's not enough for an employee just to say, well, I just have some random pain. Okay, that doesn't maybe trigger anything. But what about the sending of the medical marijuana card and the information the plaintiff discloses to the CEO, I think, in that email? Because I think the suggestion is that I'm not just making this up. I've actually, you know, doctors have looked at this. I've gone through other therapies. Nothing has worked. And so, that's why I've been prescribed. Yeah, all they have is a card. And he's saying that it's for a bad condition. That the medical record to support the card or not to do this, we don't know if it's for stress, anxiety, or some other reasons you would take marijuana. So, but in the cases, definitely say that in that situation, you as the employer are entitled to basically demand further backup. You know, you don't have to take the employee's word for it, essentially. But you're going in-depth. I think you're going to request, you're entitled to require backup as a threshold matter if there is a disability. I think it's a cart before the horse situation here. Because he's complaining of back pain. He says it's bad. But if I'm an employer, I'm thinking, okay, well, anybody who's had back problems, the first thing is you go to physical therapy. Maybe you have some epidural injections. Maybe you have surgery. But when you just come in with pain and those kinds of issues, you don't conclude somebody has a disability as defined under FIIA. There's a lot more that has to happen before you get to that level. Otherwise, anybody who, any employee who says I have migraines and it's really hard for me to work, you have a disability and all the other triggers for accommodations and interactive process come into play. So this is, you know, this doesn't reach even the minimal showing that the council's talking about for a disability, especially from the standpoint of my client and what they're getting from him. So I don't think you get to the pretext issue because there is no disability. Okay, what about the conversation that occurs on, again, I'm guessing it's the morning of the 10th in which the plaintiff, because there was ambiguity before, the plaintiff says, I'm actually not able to do my job during the day without something to help me with this pain. That's how severe it is. That's how much I was relying upon medical marijuana. I actually need to take what I think of as a more serious drug, these synthetic opioids, in order to treat the pain during the day. Why isn't that, at that point, you know that he's actually expressing I have some limitation on just my ability to get through the work day. I don't think he's saying that. He's asking if he can take the opioid. But what he's saying vis-a-vis what he can do on the job is that he can't sit all day. That's really the job connection. Because the disability has to be tied to his job performance, his ability to do his job. And those are the Archiaga case, the Buglero case, Leatherberry, and the Gichet decisions which we cite. That's the real problem because you put a terrible onus on an employer every time somebody comes in and says I've got pain, I'm having a hard time getting through the day, it really hurts. That can't be the disability trigger. It's got to be something more. And in this case, it doesn't get that far. I think I've covered everything else. The opioid use is now case law. I'm allowing somebody's accommodation. I'm just going to say the problem again to your client is just that it's not, this is my problem with the case as a whole. I don't know who ultimately should win here necessarily. But in terms of getting past summary judgment, I think a jury could conclude that this was a sincere request for an accommodation. Not that you, the employer, have to accept that. But that does trigger a duty to engage in an interactive process. And that just never occurred because he was immediately told absolutely not, you can forget about that. And that's the end of it. They never perceived him as disabled. That's really the crux. And if you don't get past that first hurdle, then the rest of the three prongs of the Nellis Douglas don't really trigger. I mean that was the big concern. And if you look back to how this developed, he gets an offer from the Florida recruiter and he's told he's got to go for a drug test and he puts it off. He says, I got my mother. And you're a. Well, if you skip the step that he accepted the offer. I really don't understand how he had this offer letter that didn't mention this. That he then accepts, quits the job and starts moving and then only then this comes up. No, it came up when he was asked to drug test when he was still in Florida. And what does he do after he's told. But hadn't he been in Boston? I thought he moved. I mean he's in Florida on his way from Boston to, I mean it's not on the way, but he goes to do something in Florida because he hasn't already been in Boston. I think he'd been in Boston before, but I don't think he's on the move then. I think he's, he stops using marijuana on November 14th or 15th because he's afraid he's going to test positive. And he wants to test clean for his job. So he knows this is a job requirement. Why would you want to be sure you test clean unless you know the drug testing is part of the conditions of employment. But he didn't, what is your evidence that he knew that when he signed the contract and quit his other job? Well, we don't have a contract claim. We don't have an estoppel claim. We don't have any of that. So you mentioned the contract issues. Those are not in play here at all as will employment. And I'm not, he did not rely to his detriment from what I can tell when he was told he had to drug test. He could have said, oh, wait a minute, I have to drug test. There's no deal. I'm not going forward. And if he had been tested on November 14th and 15th before he even took the job, before he even went to California, we wouldn't be here today because he would have tested positive in the pre-employment test. And that would have killed him. That would have been all over. That would have been the end of his case. So I'm just saying the sequence is that he knew all along he had to be drug tested. That that was a condition of him working. Whether it's express. He knew that all along. He knew that maybe at some point. Whether it's express or not, I don't think that matters, frankly. I think he knew that was part of the, you know, when he came to California, when he started the first day, there were tons of other job requirements that weren't in the offer letter. You can't include the entire encyclopedia of conditions in an offer letter. And. Why does the handbook say up to and including termination if termination is actually the only part of the policy? I guess they want to have some flexibility up to and including means that, you know, that you could have some counseling or go to drug rehab. I mean, those are just general terms that you would include in any kind of employment agreement or conditions of employment. But that suggests it's not absolute termination. Well, absolute termination, well, he's an at-will employee. The question here is not whether the termination was based on something in the contract. The question is whether the termination was based on a prohibitive bias. That's the key. It's not a contract claim. It's what was the motivation of the employer in terminating him? Yeah, but I understood your argument to be we have a blanket policy because of our federal contracts that no one can be using drugs. If the handbook says up to and including, and you just said maybe we send people for counseling, it doesn't sound like you are sticking to the story that you have a blanket policy. I think they're sensitive to the whole idea of drug use because of the federal contract. And it may be that some federal contracts have some flexibility. I don't know. But that was the trigger. That's what made him really concerned about having somebody who was going to test positive and have these federal contracts. And it was a legitimate basis for the termination. And it wasn't protected. But we'll see what my colleagues have to say about that. Thank you very much for your argument. Let's put a couple of minutes on for rebuttal. Thank you, Ernier. I want to highlight a few things that Mr. Martinez just said that I think are of actual quite a bit of consequence here. First, he referred to my client as functioning just fine. I think those were the words he used on the job for those first two weeks. That he was functioning just fine. He was doing his work. That takes us 180 degrees away from Hind. The Hind case does not apply in this situation. He was making, in their words, meaningful contributions. And so, therefore, this was not a pre-employment drug test. This was an illegal employee drug test. He was an employee when he was drug tested. And it did not fit any of the categories of loader for a permissible employee drug test. As a result, under Santillan and Villalobos, it can't be used in summary judgment. It should have just been completely ignored and set aside. And so, then, there is no legitimate basis offered for termination. And they confirmed at the hearing at the district court that that is the only basis for termination. And as soon as that's removed from the, or at least put in dispute, right, at least a material dispute of fact over whether or not Hind, if this is the same status as the employee in Hind, something has to be reversed. There's no other possible conclusion. And secondly, Ms. Martinez says, on that particular synthetic opioid, you are, quote, unable to function. Well, then, how could it not be an accommodation to figure out how to be able to take it while you're an employee? I mean, that pulls the accommodation claim completely outside of the rationale of not just the district court, but the motion. There was no alternative basis for summary judgment, other than that he wasn't a qualifying employee under the FEHA. So, if you're unable to function under this drug and they acknowledge that, it has to be an accommodation to be able to take it. And maybe they can say no, maybe it's not available. But as Judge Watford said, you then have a duty to engage in this interactive process. And so, finally, closing on this issue of he could have said, no deal, fine. The important element of fact left out there, and it's in the record, he already told them. He had quit the job in Boston. And that is the real manifest unfairness. And that's where I come back to that powerful quote from Lionel versus American Airlines in this court's own words. So, just one last question, if I could. You know, I think what you heard from your opponent today is they really are putting all of their eggs in the basket that your client just wasn't disabled as a threshold matter. And is that a legal determination, or does that go to the jury as well? Well, it certainly, I think, has a component of legal and fact, right? I mean, but the legal base, the legal bar is exceedingly low, right? There's plenty of California cases that say the FIHA language about disability is by example, it's a flexible standard. You know, anything that makes a normal life activity more difficult is a disability  What is the threshold to place that burden on the employer? What does the employee have to show in order to trigger it? Is it simply a complaint, or does it have to produce some evidence that will, objective evidence or medical evidence of some sort? This is the Perlin versus United Airlines case that actually relies on a Washington Supreme Court case of Goodman under a similar FIHA statute that says you just have to provide minimal notice, and that triggers. And I, but I want to, and this is a good point to close on, Judge Hoffman, I want to be very clear that this suggestion that my client was just complaining about pain is simply false. I mean, it's not true. She told them, and I'll read from the declaration, I advised Gormley that I had a medical condition that caused severe chronic back pain. I mean, that's like saying, oh, I keep sneezing versus I'm allergic to the cat right next to me, and I keep sneezing because I have an allergy. You're disclosing a medical condition that causes the symptom of severe chronic pain. You're not just saying, I have a headache, my back hurts, you know, I'm always in pain. You have a medical condition, and it goes on to say here's what the state of Florida concluded based on MRIs, medical therapies, doctor notes. This is more than just complaints about pain. But the question, again, is whether it is his own self-serving declaration or whether there's some medical or objective support for those statements. Well, that's a good point, too, because this is where I think the Ortega case is grossly misrepresented by both my colleague and the district court. It does not stand for the simple proposition that pain alone is not enough. It does, like pain alone is not enough in Ortega, dot, dot, dot, and they just stop there. Because the dot, dot, dot continues and says when the employer sends the employee to a second opinion medical doctor, and that doctor clears them for the particular duties of the job. Ortega stands for that the employer can rely on contradictory medical information even when the employees say, no, no, I'm really hurting, I'm in pain. Well, if I go and get a doctor and he tells me that you're fine, I can rely on that and not just your complaints of pain. And here, more to the judge's question, my client said, you know, there were MRI records available. There were medical notes available. He had sent them to the state of Florida. I always come back in this case to when was enough enough? What more do my client have to do? And they're unable to cite any authority to suggest when my client would have been disabled for the purposes of this case. You know, they didn't pass for those MRI records. And just think of it kind of logically. You know, if I'm telling you, here's the conclusion the state of Florida made based on all of these records, why would I then also send the records? Especially then when you're told no immediately, right? This was all in the context of the request for accommodation. I'm not going to go back to my desk and say, well, here's an MRI image. Can you please reconsider? I mean, he did a lot more than complain just about pain. And he did what the law was required to satisfy that first hurdle. Okay. All right. Thank you very much for your argument. The case just argued is submitted.
judges: WATFORD, FRIEDLAND, Robreno